UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| **RICHWOOD ON THE RIVER, LLC** § § § | |
| *Plaintiff,* § § | **CIVIL ACTION NO. _____** |
| **v.** § § | |
| **OWNERS INSURANCE COMPANY** § § § | |
| *Defendant.* § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

COMES NOW Richwood on the River, LLC ("Plaintiff"), by and through its counsel, hereby files this Original Complaint and Jury Demand against Owners Insurance Company, and respectfully shows as follows:

**I.**
**PARTIES AND PROCESS SERVICE**

1. Plaintiff is a Limited Liability Company organized and formed under the laws of the State of Kentucky.

2. Defendant Owners Insurance Company ("Owners" and/or "Defendant") is an insurance company engaged in the business of insurance in the State of Kentucky. Defendant Owners may be served with process through its registered agent CT Corporation System, 306 West Main Street, Suite 512, Frankfort, Kentucky 40601.

**II.**
**JURISDICTION**

3. Plaintiff is a Limited Liability Company organized and formed under the laws of the State of Kentucky, with its principal place of business in Milton, Trimble County, Kentucky.  Plaintiff

has two members, both of whom are individuals domiciled in and citizens of the State of Kentucky. For purposes of diversity jurisdiction, Plaintiff is a citizen of Kentucky.

4. Defendant Owners Insurance Company is an insurance company incorporated under the laws of the State of Ohio, with its principal place of business in Lansing, Michigan. For purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1), Defendant Owners is a citizen of Ohio and Michigan.

5. Accordingly, as Plaintiff is a citizen of Kentucky and Defendant is a citizen of Michigan and Ohio, complete diversity of citizenship exists between the parties pursuant to 28 U.S.C. § 1332(a)(1).

6. The amount in controversy exceeds $75,000, exclusive of interest and costs, as Plaintiff seeks recovery under an insurance policy for covered damages substantially exceeding this amount.

7. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

8. This Court has personal jurisdiction over Defendant Owners because Defendant engages in the business of insurance in Kentucky, issued the subject insurance policy in Kentucky, and insured Plaintiff's property located in Kentucky. Plaintiff's causes of action arise directly from Defendant's business activities in Kentucky.

### III.
### VENUE

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the property damage and events giving rise to Plaintiff's claims occurred within the State of Kentucky and within the Eastern District of Kentucky, Frankfort Division.

## IV.
## NOTICE AND CONDITIONS PRECEDENT

10.  All conditions precedent necessary to maintain this action and the insurance claim under the insurance policy at issue in this lawsuit have been performed, occurred, or have been waived by Defendant, or Defendant is otherwise estopped from raising same due to Defendant's prior breach of the insurance contract. Defendant has not been prejudiced by Plaintiff's action, inactions, or delays, if any.

11.  Any failures that may have occurred on behalf of the Plaintiff have not prejudiced the Defendant in this case.

## V.
## FACTS

12.  This lawsuit relates to a claim for insurance proceeds for damage caused to Plaintiff's property by a weather event.

### A. The Property and The Policy

13.  Plaintiff Richwood on the River, LLC operates as a full-service historic destination event and wedding venue with a bed and breakfast located at 1233 Highway 36, Milton, KY 40045 (the "Property").

14.  Nestled along the scenic Ohio River, the Property spans just over 115 acres of beautifully manicured grounds featuring a diverse collection of mature trees and lush landscapes, providing a picturesque and serene setting for events. The venue is open year-round, with peak season running from spring to early fall.

15.  The Property consists of eight buildings, including a large historic manor home with guest rooms, a carriage house, and multiple cabins and barns. The roofs on the buildings consist of a variety of roofing materials, including composite laminate shingles and metal roofs.



*Hotel Building at the Property Prior to the Subject Loss*



*Big Barn Building at the Property Prior to the Subject Loss*

16. Plaintiff has consistently taken all reasonable steps over the years to ensure the Property and its buildings were properly maintained and in good repair.

17. At all times material to the facts and circumstances which give rise to this suit, the Property was insured under insurance policy number 204614-09792447-23 issued by Defendant Owners Insurance Company (the "Policy"). Plaintiff is the owner of the Policy and the named insured on the Policy.

### B. March 14, 2024, Tornado Event

18. On or about March 14, 2024, during the effective dates of the Policy, a tornado struck Milton, Kentucky, causing significant damage along Highway 36, including Richwood on the River's Property (the "Tornado").

19. According to the National Weather Service ("NWS"), the tornado intensified as it moved through Milton, uprooting numerous hardwood trees and damaging several homes and businesses. The NWS reported peak wind speeds of 115 miles per hour. The Kentucky State Police reported that Highway 36 was rendered impassable due to downed power lines and trees, leading to its closure between Carrollton and Milton for at least 14 hours.

20. As a result of the Tornado, the Property sustained significant physical damage, including damage to the roofing systems, support structures, exterior, and interior.

21. Contents and personal property were also damaged as a result of the Tornado, including wedding and venue supplies and furniture.

22. Several trees and landscaped areas were also damaged as a result of the Tornado.

23. The damages to the Property as a result of the Tornado are the type of damages covered under the Policy.

24. In addition to structural, landscaping, and personal property damage, Plaintiff also experienced a loss of business and business income as a result of the Tornado. The Tornado occurred during the beginning of the peak season for Plaintiff's business operations, causing substantial losses and preventing Plaintiff from continuing its normal business operations.

25. Plaintiff took all reasonable and necessary steps to mitigate the damages after the Tornado.

26. Prior to the Tornado, the roofs and support structures at the Property were performing as intended.

### C. The Insurance Claim and Defendant's Failure to Properly Handle the Claim

27. After the damages from the Tornado became apparent, Plaintiff promptly and properly submitted a claim to Defendant for the damage and loss incurred as a result of the Tornado.

28. After receiving notice of the loss, Defendant assigned claim number 300-0153433-2024 to the loss (the "Claim").

29. After receiving notice of the loss, it became incumbent upon Defendant to conduct a reasonable and thorough investigation of the Claim, including determining the date of loss, the cause of the covered damages, and the cost to repair the covered damages.

30. Defendant assigned claims representative Robert Churchman as the adjuster for the Claim. Defendant also retained Clinton L. Davis and Michael F. Connor of EFI Global, Inc. ("EFI") to assist it in the investigation of the Claim.

31. At all times material hereto, Mr. Churchman, Mr. Davis, Mr. Connor, EFI, and any other persons or entities involved with working on the Claim on behalf of Defendant were acting as Defendant's agents in the course and scope of their agency with Defendant. Accordingly, Defendant is liable for their acts and omissions.

32. Defendant's adjuster, Robert Churchman, inspected the Property and prepared an estimate dated April 2, 2024, pursuant to its investigation. The adjuster performed an improper investigation and overlooked numerous areas of Tornado damages, resulting in a gross undervaluation of the loss.

33. Accordingly, the adjuster's estimate misrepresented the actual reasonable and necessary repairs required to fix and address the damages from the Tornado.

34. Based on this estimate, Defendant issued payment for damages in the amount of $217,050.45 for all seven buildings included in this Claim. Unfortunately, this payment accounted for only a fraction of the actual damages owed to Plaintiff under the Policy.

35. Thereafter, Plaintiff and its representatives, including its contractor with Advantage Roofing and Construction, disputed Defendant's findings.

36. Plaintiff and its representatives continued to provide Defendant with evidence of the damages at the Property, specifically evidence of the dangerous conditions to building seven, the Big Barn, as a result of the Tornado and its damaging winds. Plaintiff and its representatives informed Defendant that the Big Barn was a total loss as a result of the Tornado and requested that Defendant consider the building's condition and issue payment for the reasonable and necessary repairs.

37. Instead of readjusting its estimate to account for the full extent of covered damages, Defendant continued to undervalue the loss and represent that the repair costs were significantly less than they actually were.

38. Defendant's retained consultants with EFI Global ("EFI") inspected the two barns at the Property and produced a report dated June 7, 2024.

39. EFI performed a grossly inadequate inspection of the buildings despite knowledge of the severity of the damages and danger of structural integrity of the buildings, specifically the Big Barn. Its subpar inspection failed to account for all damages present at the Property – whether admitted in its report or otherwise reasonably ascertainable – and understated the severity of the loss, particularly the failing structural integrity of the Big Barn.

40. For example, EFI's report attempts to attribute several areas of damage to the trusses to "long-term moisture" and claims that some missing material to the wood trusses were not the result of the Tornado, while overlooking the fact that the interior of the structure - including the trusses - was exposed to the elements and windborne debris after a significant portion of the roof was torn off by tornado winds.

41. Further, EFI's findings represented several inconsistencies – all which Defendant relied upon to deny this portion of the Claim. Most notably, EFI attributes structural damage to alleged deterioration while simultaneously acknowledging that the roof and wood-framed purlins were displaced, uplifted, or entirely missing as a result of tornadic wind forces. Any alleged conditions such as "deterioration" or "moisture" identified by EFI Global were not the cause of the damages, which were clearly the result of the catastrophic EF-2 tornado that devastated the Trimble County community.

42. Despite the damages being evident had a thorough and proper inspection been performed, Defendant's consultants misrepresented the damages and continued to offer improper and inaccurate opinions that did not accurately reflect the actual covered damages sustained to the Property.

43. Defendant relied on such opinions with knowledge of their falsity and/or inaccuracy.

44. Plaintiff and its representatives notified Defendant and its representatives of the extent of damages at the Property as a result of the Tornado, including the dangerous conditions of the Big Barn with respect to its failing structure due to the tornado damages – conditions that should have been identified, acknowledged, and covered by Defendant in a timely manner.

45. Defendant and its representatives were put on notice of their gross undervaluation and payment of damages on the Claim, and specifically in relation to the Big Barn – which prevented Plaintiff from making prompt repairs of to the building and its failing trusses – and were specifically notified of the risk of additional damage and injury due to the structural failure of the support structures.

46. Despite this knowledge, which was evident from the outset of its investigation, Defendant continued to ignore this information and failed to make timely payment for the full amount of covered repair costs necessary to return the Big Barn to its pre-loss condition.

47. Defendant ignored all warnings and evidence of the structural failure of the Big Barn and the risk of additional damage and injury.

48. Moreover, Defendant's undervaluation of the repair costs to other damaged buildings forced Plaintiff to allocate insurance proceeds from portions of the claim to repair certain buildings while leaving others closed, as Plaintiff worked to complete what repairs it could in an effort to mitigate its losses and resume operations.

49. Plaintiff provided Defendant with documents evidencing the damages and its Claim. Despite receiving evidence of the covered losses, Defendant continued to undervalue the loss and continued to stand firm on its prior claim decision.

50. Defendant was aware that its consultants' findings and reports misrepresented the damages at the Property, yet nevertheless adopted those misrepresentations to justify its underpayment and partial denial of the Claim.

51. Defendant provided Plaintiff with no reasonable or meaningful explanation for its failure to issue full payment for the repair costs owed under the Policy, and failed to identify any specific Policy provisions that would justify its position.

52. Plaintiff presented a Claim under the Policy for damages caused by the Tornado. It was Defendant's responsibility, not the insured's, to conduct a reasonable and thorough investigation of the Claim to determine the specific cause of the loss and the amount of loss. Defendant failed to do so, and wrongfully undervalued and denied in part Plaintiff's Claim despite its liability being reasonably clear.

53. To date, Defendant has failed to make full payment as owed under the Policy and continues to delay resolution of the Claim.

54. Defendant has failed to make a good faith attempt to settle the Claim and has failed to make payment to Plaintiff as owed under the Policy. As a result of Defendant's acts and omissions, Plaintiff is entitled to interest pursuant to KRS 304.12-235.

55. Defendant refused to pay the Claim as fully owed without first conducting a reasonable investigation based upon all available information. Further, Defendant has failed to attempt in good-faith to effectuate a prompt, fair and equitable settlement of the Claim in which its liability had become reasonably clear. Thus, Defendant's denial to fully compensate Plaintiff was a misrepresentation of the Policy and of pertinent facts. Defendant's conduct as described above constitutes a violation of KY. STAT. §304.12-230.

56. Because of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firms who are representing Plaintiff in this litigation.

## VI.
## CAUSES OF ACTION AGAINST DEFENDANT OWNERS INSURANCE COMPANY

57. Defendant is liable to Plaintiff for breach of contract, breach of the duty of good faith and fair dealing, bad faith, as well as intentional violations of the Kentucky Insurance Code.

58. Plaintiff reincorporates and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

### A. Breach of Contract.

59. The Policy is a valid, binding, and enforceable contract between Plaintiff Richwood on the River, LLC and Defendant Owners Insurance Company. Defendant breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Kentucky law. Defendant's breach proximately caused Plaintiff injuries and damages. All conditions precedent required under the Policy have been performed, excused, waived, or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract.

### B. Noncompliance With the Kentucky Insurance Code: Unfair Claim Settlement Practices Act.

60. The conduct, acts, and/or omissions by Defendant constituted Unfair Claim Settlement Practices pursuant to KY STAT.§ 304.12-230, in that Defendant did not attempt in good faith to effectuate prompt, fair, and equitable settlement of claim in which liability has become reasonably clear, and by compelling its insured to institute litigation to recover a fair amount for the Claim.

61. Defendant knew there was no reasonable basis, or acted in reckless disregard for whether such a basis existed, in not paying the Claim and/or failing to effectuate a prompt, fair, and

equitable settlement of the Claim. Defendant was obligated to pay the Claim under the terms of the Policy, lacked a reasonable basis for denying the Claim, and either knew there was no reasonable basis for doing so, or acted with reckless disregard for whether such a basis existed. Defendant's acts and omissions constitute bad faith and in violation of the Unfair Claim Settlement Practices Act, as outlined in KRS 3014 12-230.

62. As a direct and proximate result of Defendant's bad faith and violations of the Unfair Claim Settlement Practices Act, Plaintiff has sustained property damage losses, damages to its business personal property, a loss of business and business income, inconvenience, and has been denied full and proper use of its Property.

63. Further, Plaintiff has incurred costs and expenses related to the loss of full and proper use of its Property, attorney fees, professional fees, and other costs, all to their damage in an amount exceeding the minimal jurisdictional limits of this Court.

64. Plaintiff asserts the bad faith and/or violations of the Unfair Claim Settlement Practices Act by Defendant were intentional, willful, wanton, reckless, and the acts of Defendant were grossly negligent, and constituted oppression and malice upon or towards Plaintiff thus entitling Plaintiff to an award of punitive damages to be determined by the jury.

**C. Breach of the Duty of Good Faith and Fair Dealing.**

65. Defendant's above-described acts and omissions breached the common law duty of good faith and fair dealing contained in the contract which was owed to Plaintiff by denying or delaying full payment on the Claim when Defendant knew or should have known that its liability to Plaintiff was reasonably clear.

66. As a direct and proximate result of said acts and omissions, Plaintiff has sustained property damage, business income loss, and inconvenience. Defendant's conduct proximately caused

Plaintiff to be restricted to full and proper use of its Property, which caused Plaintiff to incur costs and expenses related to the loss of use of its Property, attorney fees, professional fees, and other costs all to their damage in an amount exceeding the minimal jurisdictional limits of this Court.

67. Plaintiff asserts that the actions of Defendant were intentional, willful, wanton, reckless, and the acts of Defendant were grossly negligent, and constituted oppression and malice upon or towards the Plaintiff, thus entitling them to punitive damages in an amount to be determined by a jury.

## VII.
## KNOWLEDGE

68. Each of the Defendant's acts described above, together and singularly, was done intentionally, knowingly, willfully, and with reckless disregard as the safety of Plaintiff, its property, its residents, the damages and claim.

## VIII.
## DAMAGES

69. Plaintiff will show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damage sustained by Plaintiff.

70. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorney fees.

71. To the extent Defendant contends replacement cost benefits are not available because Plaintiff has not completed repairs to the Property, Plaintiff relies upon the doctrine of prevention to excuse Plaintiff's compliance or performance to satisfy any terms or provision of the Policy which may require repairs be completed prior to replacement cost benefits being available to Plaintiff.

72. To the extent Defendant contends that any portion of the damages to the Big Barn, including any additional or continuing damage, occurred outside the Policy period or resulted from an excluded peril, Plaintiff asserts that any such additional or continuing damage was directly and proximately caused by the Tornado and the structural instability created by that covered event.

73. Plaintiff further alleges that Defendant's failure to fully investigate, properly value, and timely pay the covered Tornado damages foreseeably caused continuing damage to the Big Barn, notwithstanding Plaintiff's reasonable efforts to mitigate its damages and losses.

74. Plaintiff placed Defendant on notice of continuing and additional damage to the Big Barn. Defendant nevertheless refused to reinspect or readjust the loss.

75. To the extent Defendant asserts that any additional or continuing damage constitutes a separate loss, Plaintiff alleges that any such additional damage was caused, in whole or in part, by Defendant's prior breach of the Policy and its failure to pay benefits when due.

76. For noncompliance with the Kentucky Insurance Code, Unfair Claim Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorney's fees.

77. For knowing conduct of the acts complained of with respect to serious harm that was known to Defendant that would occur as a result of their misconduct, and Defendant's reckless disregard of the rights of Plaintiff, Plaintiff asks for an award of punitive damages under KRS § 411.186.

78. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

79.   For Defendant's failure to make a good faith attempt to settle the claim within the statutory time limits mandated under KRS 304.12-235, Plaintiff is entitled to twelve (12) percent interest per annum of the value of the final settlement. KRS § 304.12-235. Plaintiff also seeks interest pursuant to KRS § 360.040.

80.   For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firms whose names are subscribed to this pleading.  Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Kentucky. KRS § 304.12-235.

## IX.
## JURY DEMAND

81.   Plaintiff hereby requests a jury trial and tenders the appropriate jury fee.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, and all punitive and exemplary damages as may be found.  In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**MEHR FAIRBANKS TRIAL LAWYERS, PLLC**

[signature block on the following page]

By: */s/ Philip G. Fairbanks*
PHILIP G. FAIRBANKS, #91994
201 West Short Street, Suite 800
Lexington, Kentucky 40507
800-249-3731 – Telephone
859-225-3830 – Fax
pgf@austinmehr.com

**GREEN KLEIN WOOD & JONES**
WILLIAM T. JONES, JR.*
Texas Bar No. 24032601
bjones@greentriallaw.com
DELARAM FALSAFI*
Texas Bar No. 24113083
falsafi@greentriallaw.com
* application for admission
   pro hac vice to be filed
408 East 7th Street
Houston, Texas 77007
Telephone: (713) 654-9222
Facsimile: (713) 654-2155

**ATTORNEYS FOR PLAINTIFF**